Joseph JOHNSON, Appellant–Petitioner,

v.

Patricia NATION, Appellee–Respondent.

No. 30A05–9111–CV–359.

Court of Appeals of Indiana, Fifth District.

June 9, 1993.

Michael Cheerva, Phelps & Fara, Fred Schwab, Indianapolis, IN, for appellant.

Eric N. Allen, Joseph J. Straub, Brand & Allen, Greenfield, IN, for appellee.

SHARPNACK, Chief Judge.

Joseph Johnson (Father) appeals the trial court's judgment transferring sole custody of his two minor children from himself to Patricia Nation (Mother) and granting him visitation rights. We reverse in part.

Father raises several issues for our review, but, because of our resolution of this

case, we need address only the following restated issues:

(1) Are the trial court's conclusions of law clearly erroneous?

(2) Did the trial court err by determining that Mother, as the noncustodial parent, was not required to take her children to various religious functions during her visitation time with the children?

(3) Did the trial court err by denying Father's request for modification of Mother's visitation rights?

The facts and procedural history relevant to this case are as follows. After nine years of marriage, Mother and Father were divorced in 1985 and the trial court awarded Father sole custody of Tyler, who was five years old, and Maggie, who was two years old. The trial court granted Mother reasonable visitation rights.

In November of 1985, Mother requested the court to reconsider its order pertaining to custody of the children and the trial court denied her request. In January of 1987, Mother filed a petition to modify the parties' dissolution decree seeking joint and shared physical custody of the children and designation of specific, regular periods when she would. have physical custody of the children.

At Father's suggestion, Mother and Father met in an attempt to resolve their differences. Following extensive negotiations, the two prepared a written agreement, which they submitted to their respective attorneys. Mother entered into this agreement, in lieu of going to trial, because of the extensive visitation rights she received pursuant to the agreement.[1] In May of 1987, the court approved the parties' "Agreed Modification of Decree of Dissolution of Marriage." (Record, pp. 45–47.)

In August of 1990, Father filed a petition to modify Mother's visitation, alleging that the existing visitation arrangements served neither the best interests of the children nor the best interests of the parents. On November 28, Mother filed a petition requesting, first, that the court modify custody by granting her sole custody of the children, and, second, that, after that modification, the court provide her existing visitation schedule to Father.

In May of 1991, a hearing was held on the parties' cross petitions for modification. In August, the court entered extensive findings of fact and conclusions of law, as well as a judgment which granted sole custody of the children to Mother and granted Father extensive visitation. It is from this judgment that Father appeals.

First, Father argues that we must reverse the trial court because its conclusions of law are clearly erroneous. We agree.

■ In an initial custody determination, no presumption favors either parent. Ind. Code § 31–1–11.5–21(a). The court assumes that both parties are equally entitled to custody, but bases a decision on which parent would better rear the child. *Walker v. Chatfield* (1990), Ind.App., 553 N.E.2d 490, 492. The best interests of the child determines custody. I.C. § 31–1–11.5–21.

■ A change of custody request is governed by a different standard. *Adams v. Purtlebaugh* (1951), 230 Ind. 269, 102 N.E.2d 499. Only upon "a showing of changed circumstances so substantial and continuing as to make the existing custody order unreasonable" may a trial court modify a custody arrangement. I.C. § 31–1–11.5–22(d). This statute is a codification of our case law, which requires a change in circumstances so decisive in nature as to make a change in custody necessary for the welfare of the child. *Poret v. Martin* (1982), Ind., 434 N.E.2d 885, 888.

■ The trial court here made extensive findings of fact and conclusions of law. Where the trial court has heard the evidence and had the opportunity to judge the credibility of the witnesses, a reviewing

1. The agreement granted Mother the following visitation rights with her children: every other weekend, two evenings a week, seven days during Christmas vacation, Thanksgiving vacation, Easter visitation, spring break, other specified holidays, Mother's Day, Mother's birthday, and nine weeks during the summer.

court will not set aside the findings of fact and conclusions of law unless they are clearly erroneous. *Lawyers Title Ins. Corp. v. Pokraka* (1992), Ind., 595 N.E.2d 244. In determining whether findings of fact and conclusions of law are clearly erroneous, we will neither reweigh the evidence nor determine the credibility of the witnesses; rather, we will consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. *Id.* Only where the record contains no facts or inferences supporting the trial court's findings are the court's findings of fact clearly erroneous. Where uncontradicted evidence may support conflicting inferences, the inferences drawn by the trier of fact will prevail. *Id.* Only when the evidence is without conflict and leads to but one conclusion, but the trial court reached a contrary conclusion, will we reverse the trial court's decision as being contrary to law. *Id.*

The trial court's "findings of fact" and conclusions of law relevant to this issue read as follows:

"11. On November 28, 1990, after having taken the deposition of Joseph Johnson on November 14, 1990, [Mother] filed her Petition to Modify seeking custody of Tyler and Maggie. In that petition [Mother] alleged that [Father] had essentially become preoccupied with his church related and evangelistic activities and that this change in [Father] constituted a substantial and continuing change of circumstances since the date of the entry of the Decree on September 10, 1985: . . . .

12. From the date of the marriage of the parties on October 27, 1976 until their separation on May 31, 1985, religion played a very insignificant factor in the family life. The evidence is that at the most [Mother] and [Father] attended church once or twice per year and were not involved in any church related activities. Based upon this and other testimony, the Court finds that the parties held a belief in God during their marriage and that their objective was to raise their children with the recognition of the ethi-

cal values (such as the Ten Commandments) which are found in their religion.

\* \* \* \* \* \*

14. Upon returning to Greenfield, [Father] reestablished his ties with his home church and began to become deeply involved in church activities. [Father's] current wife is the choir director at his church and each of them are involved in many different church and church related activities.

15. [Father] seeks to substantially cut back and place limitations upon the amount of [Mother's] visitation with the children in part because of his renewed religious and evangelical activities. [Mother's] religious beliefs, objectives and desires for the minor children have not changed since the time that the parties separated.

16. For the most part, each party has been accommodating to the needs and desires of the other party in regard to scheduled activities for the minor children. The exception to this general rule has occurred most recently starting in the Spring of 1990 when [Father] began making demands upon [Mother] which such demands, if assented to by [Mother], would have substantially interfered with her visitation rights. Those demands [included] allowing [Father] to take the children with him during the summer whenever they would have been with a babysitter, a request that the children attend a camp chosen by [Father] during the period of time that the children were with [Mother] in the summer, and a demand by [Father] that [Mother] permit the children to attend whatever activity [Father] has chosen for them whenever that activity occurs during the period of time that the children are scheduled to be with [Mother]. When [Mother] refused to accede to [Father's] demands, the Petition for Modification of Visitation was filed by [Father].

\* \* \* \* \* \*

21. Indiana Law (I.C. 31–1–11.5–21) states that the custodial parent may determine the religious training of the minor children. The subject of religious

training, and specifically the amount of it, has become an issue in this case. Because the subject of religious training is a matter which Indiana law regards as significant in the minor child's upbringing, a change of circumstances as to those circumstances relating to religion will in some cases be sufficient to warrant a change of custody. In the case at bar, the evidence is undisputed that [Father] has made a substantial change in his attitude and involvement in religious activities since the date of the last custody order.

\*   \*   \*   \*   \*   \*

24. The Court finds that [Father] is using his religion as an excuse to attempt to control the activities of the minor children while they are with [Mother].

25. The Court further finds that [Father] has used his religion as a means by which to interfere with [Mother's] visitation rights with the minor children.

26. The Court finds that [Father] has interfered, and continues to attempt to interfere, disrupt and reduce [Mother's] visitation with the minor children in an attempt to disrupt and interfere with [Mother's] relationship with the minor children.

\*   \*   \*   \*   \*   \*

28. The Court takes no position on the correctness, validity or falsity of any religious or ethical beliefs held by any party in this case. The court does find though that it is an inalienable right of a parent to expose that parent's children to the beliefs, attitudes and values held by that parent. In the case at bar, the Court finds that [Father] has attempted to block the transfer of those beliefs, attitudes and values from [Mother] to the minor children. Such activities are sufficient to warrant a change of custody.

## II.  CONCLUSIONS OF LAW

\*   \*   \*   \*   \*   \*

2. A substantial and continuing change of circumstances has occurred

since the date of the last custody determination.

3. It is in the best interest of the minor children for custody to be placed with [Mother] ..."

(Record, pp. 139–141.)

■ We begin our analysis of this issue by addressing the trial court's finding of fact # 21, which is actually a mixed finding of fact and conclusion of law. There, the trial court found that Father had made a substantial change in his attitude and involvement in religious activities since the date of the last custody determination. According to the trial court, a change of circumstances relating to religion will sometimes be sufficient to warrant a change of custody. While we find the court's factual finding regarding Father's change of involvement in religious activity to be amply supported by the record, we disagree with the court's conclusion that such change of circumstances here warranted a change of custody.

Pursuant to I.C. § 31–1–11.5–21(b),

"Except as otherwise agreed by the parties in writing at the time of the custody order, the custodian may determine the child's upbringing, including his education, health care, and religious training, unless the court finds, after motion by a noncustodial parent, that in the absence of a specific limitation of the custodian's authority, the child's physical health would be endangered or his emotional development significantly impaired."

■ The trial court here correctly interpreted I.C. § 31–1–11.5–21 as granting to Father, the custodial parent, the right to determine the religious training of his minor children. While the custodial parent may enjoy such a right, that right may be limited if the noncustodial parent demonstrates that the child's physical health would be endangered or the child's emotional development would be significantly impaired without some limitation. *Overman v. Overman* (1986), Ind.App., 497 N.E.2d 618, 619; I.C. § 31–1–11.5–21(b). A noncustodial parent may not impose that parent's own religious views on the child

and the custodial parent's right to choose religious training is paramount so long as the training does not unreasonably interfere with the noncustodial parent's visitation rights. *Overman*, 497 N.E.2d at 619; *Swartzel v. Swartzel* (1986), Ind.App., 492 N.E.2d 71, 73.

Here, the trial court modified Father's right to custody because of "undisputed [evidence] that [Father] ha[d] made a substantial change in his attitude and involvement in religious activities since the date of the [parties'] last custody order." (Record, pp. 140–141.) The trial court made no finding concerning whether this change impacted either the children's physical health or their emotional development. The trial court provides no authority, neither have we found authority, which supports its conclusion that a substantial change in circumstances relating to religion, without more, may support a modification in custody. Mother contends that Father's exercise of his right to determine the religious training of the children was detrimental to the children's emotional development; however, the evidence does not reflect that to be the case. For these reasons, we hold that the trial court erred by basing its decision to modify custody solely on a substantial change in Father's attitude toward and involvement in religious activities, without evidence that the children's physical health was being endangered or their emotional development was being significantly impaired.

■ We address next the trial court's finding of fact # 28, which is also a mixed finding of fact and conclusion of law. There, the trial court found that Father had attempted to block the transfer of Mother's beliefs, attitudes and values to the children. According to the trial court, a parent possesses an inalienable right to expose their children to their own beliefs, attitudes and values, and blockage of such a transfer warrants a change of custody. Again, the trial court erred by concluding that such activity may justify a change of custody.

Indiana law tells us that it is the custodial parent, here Father, who has the right to determine the children's religious training. I.C. § 31–1–11.5–21(b). The trial court provides us with no authority, nor have we discovered any, which supports the conclusion that blockage of the noncustodial parent's transfer of her own "beliefs, attitudes and values" may justify modification of a custody arrangement. Rather, a trial court may modify a custody arrangement only upon a showing of changed circumstances so substantial and continuing as to make the existing custody order unreasonable—a showing of a change so decisive in nature as to make a modification in custody necessary for the welfare of the children. I.C. § 31–1–11.5–22(d); *Poret*, 434 N.E.2d at 888. Because Father's attempts here to block the transfer of Mother's "beliefs, attitudes and values" are insufficient standing alone to satisfy the stringent test necessary for modification of custody, we hold that the trial court erred by concluding that Father's actions here warranted a change of custody.

■ We conclude our analysis of this issue by addressing the trial court's finding of fact # 25, where the trial court found that Father had interfered with Mother's visitation rights. To the extent that the trial court based its decision to modify custody on the finding that Father had interfered with Mother's visitation rights, the court again erred because the evidence reveals that Mother was nevertheless able to have meaningful visitation with her children on a regular basis and the evidence does not reveal that Father's interference had an adverse effect on the children.

■ Fostering a child's relationship with the noncustodial parent is an important factor bearing on the child's best interest and, ideally, a child should have a well founded relationship with each parent. *See State v. Starke Circuit Court* (1958), 238 Ind. 204, 149 N.E.2d 541, 543–544. Our legislature has addressed the question of whether a custodial parent's barring of a noncustodial parent's visitation rights might constitute grounds for modification of custody and has decided that, in some cases, it may. I.C. § 31–1–11.5–26. We have found no Indiana authority, however,

which has addressed the different issue of whether a custodial parent's interference with a noncustodial parent's visitation rights may do so.

Several jurisdictions which have considered this issue have determined that, while a custodial parent's interference with the noncustodial parent's visitation rights may be something less than total blockage, it is nevertheless a serious matter and may be a factor relevant to the issues of both a change in circumstances and the child's best interests. *See Long v. Long* (1989), Mo.App., 771 S.W.2d 837, 839 (that custodial parent had, by his own admission, denied meaningful visitation to noncustodial parent not enough by itself to warrant custody modification but rather a relevant factor to be taken into consideration); *Ellis v. Ellis* (1988), Mo.App., 747 S.W.2d 711, 715 (interference by custodial parent with noncustodial parent's visitation rights is a changed condition which may justify a modification in custody where custodial parent repeatedly made false accusations against noncustodial parent concerning child and/or sexual abuse and programmed child in an effort to manufacture evidence against noncustodial parent); *Smith v. Smith* (1990), Utah App., 793 P.2d 407, 411 (interference with visitation may be a factor relevant to the issues of both a change in circumstances and the child's best interests); *Clary v. Bond* (1992), 3 Dept., 186 A.D.2d 869, 589 N.Y.S.2d 201, 203 (while interference with noncustodial parent's visitation is a serious matter, circumstances were not egregious enough to warrant changing custody because noncustodial parent was able to visit child fairly regularly); *Johnson v. Johnson* (1988), Mo.App., 758 S.W.2d 721, 725 (custodial parent's interference with noncustodial parent's visitation rights will support a finding of changed circumstances where custodial parent admitted she kept child away from noncustodial parent for four months).

Here, Mother directs us to evidence of Father's impediments to her visitation rights and contends that, because of these impediments, Father should no longer have custody. The interferences to which Mother directs us are the following: Father scheduled numerous church activities during her visitation time with the children; Father asked the children to call their new step-mother "mom"; Father wanted to be the children's babysitter, while Mother was at work, during Mother's visitation time with them; and Father attempted to impose his own rules concerning playground activities during Mother's visitation time. The record contains ample evidence to support each of Mother's allegations. Thus, the trial court's finding that Father had interfered with Mother's visitation is not an erroneous finding.

■■■ We agree with our sister jurisdictions that a custodial parent's interference with a noncustodial parent's visitation rights is a serious matter and in some cases may be a factor relevant to the issues of both a change in circumstances and the child's best interests. Reviewing the trial court's findings in the case before us, however, we cannot agree with the trial court's conclusion that Father's interference justified a modification of custody. The trial court made no finding, and the record does not reveal, that Father's interference had deprived Mother of regular, meaningful visitation with her children. The trial court made no finding, and the record does not reveal, that Father had barred Mother from exercising her visitation rights. The trial court made no finding, and the record does not reveal, that Father's interference had a harmful physical or emotional effect on the children. While the trial court's findings would support some modification to limit Father's interference with Mother's visitation and permit only a reasonable level of religious activity during Mother's visitation, neither the trial court's findings nor the evidence contained in the record support a complete change of custody in the absence of evidence that Father's interference either deprived Mother of regular, meaningful visitation with the children or caused physical or emotional harm to the children.

For the reasons we have stated, the trial court's conclusions of law are clearly erroneous. Thus, we reverse the judgment of the court transferring sole custody of the

two minor children from Father to Mother and granting Father visitation rights.[2]

■ Next, we address the issue of whether the trial court erred by determining that Mother, as the noncustodial parent, was not required to take the children to various religious functions during her visitation time with the children. We hold that it did not.

In Father's petition for modification of visitation, Father asked the court to modify the present visitation order for several reasons, including to "allow for the children to attend church, church functions and church activities at the church they attend with Father." (Record, p. 65.) Father alleged that the present visitation arrangements did not allow the children to receive the religious upbringing with which they had been raised and which they desired.

Father's argument here is three-fold. First, Father argues that, as the custodial parent, he has the sole right to determine the children's religious training. As part of that training, Father wanted the children to attend various religious functions on a regular, uninterrupted basis. Second, Father argues that it was reasonable to ask Mother to take the children to the religious functions of his choice during her visitation time with the children so that he could achieve regular, uninterrupted religious training for the children. Finally, Father argues that, because his request was a reasonable one, the trial court abused its discretion by not granting it. To support his argument for reversal, Father again directs us to *Overman v. Overman* (1986), Ind.App., 497 N.E.2d 618. Father's argument here fails.

In *Overman*, custodial Mother and noncustodial Father stipulated to expand Father's visitation so that Father could pick up his son on Friday evenings instead of Saturday mornings following catechism class. Father had previously picked his son up from catechism classes on Saturdays at 11:30 a.m. on his visitation weekends. Mother and Father disputed, however, whether Father would have to take his son to catechism on Saturday mornings. Father claimed that such a requirement would be unfair to him since he lived relatively far from the church. Mother claimed that, since she had the right to choose her son's religious instruction, her son should still go to catechism even if it inconvenienced Father. The trial court ordered that Father was not required to take his son to catechism. *Id.* at 618–619.

The first district reversed the trial court, holding that the trial court had abused its discretion by determining that Father was not required to take his son to catechism classes during his visitation time. *Id.* at 619. In reaching this holding, the reviewing court recognized both that the custodial parent has a right to determine a child's religious training, and that the right may be limited only if the noncustodial parent demonstrates that the child's physical health or emotional development will be significantly impaired unless the custodial parent's rights are limited. *Id.*, citing I.C. § 31-1-11.5-21(b). According to the reviewing court, "[s]o long as the noncustodial parent's visitation rights are not unreasonably interfered with, the custodial parent's right to choose religious training should be paramount." *Overman*, 497 N.E.2d at 619.

The court stated that, while transporting the boy to catechism on Saturday mornings interfered with father's visitation rights, it was not an unreasonable interference. Factors that the appellate court considered to reach its conclusion were the length of the catechism class (only 1–½ hours), the time that father and son could spend together in the long drive to class, the additional time available for Father to spend time with his son since Father could now pick his son up on Friday evenings instead of Saturday mornings, and the fact that Father had brought any inconvenience upon himself by freely choosing to pick his son up on Fridays in lieu of Saturdays. *Id.* at 619.

---

**2.** Because of our resolution of this issue, we need not address the issue Father raises concerning whether the trial court erred by hearing evidence on matters which had allegedly occurred before the parties' last custody proceeding.

In our case, the trial court found that: Father sought to substantially cut back and place limitations upon the amount of Mother's visitation with the children; Father had used his religion as a means by which to interfere with Mother's visitation rights; Father had used religion as an excuse to control the activities of the children while they were with Mother; Father had disrupted and reduced Mother's visitation with the children in an attempt to disrupt and interfere with her relationship with the children; as of the date of the last custody determination, religious activities played a very minor role in the children's lives; no evidence suggested that the children wanted additional religious activities while they were with Mother; and the children were extensively involved in religious activities while they were with Father. The court then denied Father's petition, concluding that the potential for abuse of an order allowing Father to dictate what religious activities the children should be involved in during their visitation time with Mother far outweighed any benefits that such an order might produce.

The record contains sufficient evidence to support the trial court's findings, such as evidence that: Father is obsessive about being in control and exercises far too much control over the children; Father had involved one or both of the children·in religious activities that included weekly attendance at Sunday school and Sunday services, two nights of choir practice a week, weekly attendance in the church youth group, weekly rehearsals during the fall for a Christmas program, a family singing group, and participation in a church work mission in Oklahoma; Father wanted to include the children in additional religious activities that occurred during Mother's visitation time, such as summer church camp and weekly church field trips; Mother had voluntarily cooperated for the most part with Father's requests concerning the children's attendance at religious activities during her visitation time with them; Father was unwilling to compensate Mother for her lost time with the children for any activities he considered to be "religious"; Father believed that the value to the children of time spent in religious activities outweighed the value to the children of the time they spent with Mother and her new family; and the children did not enjoy going to church or Sunday school and getting them to do so during Mother's visitation time with them was a constant battle for Mother.

Although Father does have the right to determine the religious training of the children, as we have stated, that right has limits. The evidence indicates that a court order requiring Mother to take the children to any and all activities Father deemed "religious" during Mother's visitation time would have unreasonably interfered with Mother's visitation rights. We therefore hold that the trial court did not abuse its discretion by denying Father's request for such an order.

Finally we address the issue of whether the trial court erred by denying Father's request for modification of Mother's visitation rights. Father contends that we must reverse the trial court's denial of his petition to modify custody because the record contains ample evidence that reduction of Mother's visitation rights would have served the best interests of the children. We disagree.

A court may modify an order granting visitation rights whenever modification would serve the best interests of the child. I.C. § 31–1–11.5–24. In addition to establishing that modification would be in the child's best interests, Father here must also have demonstrated some change in circumstance since the original decree. *Swartzel v. Swartzel* (1986), Ind.App., 492 N.E.2d 71, 72.

Pursuant to the parties' 1987 agreement, Mother had specific visitation rights, which included the right to have visitation with the children for nine weeks during the summer, all of spring break, and seven days during Christmas vacation. Father petitioned the court to modify Mother's visitation rights so that Mother could have visitation with the children for only half of the summer, half of spring break and half of Christmas vacation. The bases

for Father's request were that he needed additional time during the summer months and spring break to accommodate his "extended family activities" and that additional time at Christmas would eliminate arguments and conform to the parties' original intentions concerning Christmas vacation.[3] On appeal, Father argues that modification is somehow merited because his children have aged and developed new interests since the previous visitation order.

Following a presentation of the evidence, the trial court concluded that Father had failed to prove that a modification of custody would be in the best interests of the children and we agree. Father neither directs us to, nor have we found, evidence in the record to demonstrate either that modification would be in the child's best interests or that some change in circumstance, other than the natural aging of the children, has occurred since the original decree. We therefore hold that the trial court did not err by denying Father's petition for modification of Mother's visitation rights.

We affirm the trial court's judgment in all respects except the portion awarding sole custody of the minor children to Mother and granting Father visitation rights, which we reverse.

**AFFIRMED IN PART; REVERSED IN PART.**

BARTEAU and MILLER, JJ., concur.

---

**3.** The court found that, after realizing that the current visitation arrangement allowed Father to have more time with the children during Christmas vacation than an "even split" would, Father withdrew that portion of his petition requesting a modification in Christmas vacation.