# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision is not binding precedent for any court and may be cited only for persuasive value or to establish res judicata, collateral estoppel, or law of the case.



# IN THE
# Court of Appeals of Indiana

Emeralda del Rosario Mendoza Payes,

*Appellant-Respondent*



FILED

Aug 28 2025, 9:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

Luis Francisco Rivas,

*Appellee-Petitioner*

---

August 28, 2025

Court of Appeals Case No.
25A-JP-246

Appeal from the Floyd Circuit Court

The Honorable Julie Fessel Flanigan, Magistrate

Trial Court Cause No.
22C01-2404-JP-22

---

**Memorandum Decision by Judge Mathias**
Judges May and Bradford concur.

**Mathias, Judge.**

[1] Esmeralda del Rosario Mendoza Payes ("Mother") appeals the Floyd Circuit Court's order awarding custody of her child ("Child") to the child's father, Luis Francisco Rivas ("Father"), and restricting Mother's parenting time to nine hours per week. Mother argues that the trial court abused its discretion when it modified custody by awarding physical and legal custody to Father and by significantly restricting her parenting time.

[2] Concluding that the custody modification is supported by the evidence, but that the restriction on Mother's parenting time is not supported by the evidence or the court's findings, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

## Facts and Procedural History

[3] Child was born on July 6, 2018, and Father executed a paternity affidavit acknowledging that he is Child's father. Mother and Father lived together for the first three years of Child's life, and Father actively participated in her daily care and upbringing. Mother and Father also have an older daughter who is in her twenties.

[4] However, in August 2021, Mother resumed her relationship with her husband, Rodolfo Mendoza Ascencio ("Ascencio"), who is also the father of Mother's middle daughter ("K.G."), who was thirteen or fourteen years old in 2021. In 2022, Mother came to believe that Ascencio had touched K.G. inappropriately. Both law enforcement and the Department of Child Services ("DCS")

investigated the matter, but those investigations did not result in any charges against Ascencio, and DCS did not substantiate the claim. Mother remains married to Ascencio.

[5] From the date of the parties' separation in 2021 until April 2024, Father exercised parenting time with Child as allowed by Mother. The parties did not have a court order establishing custody or parenting time. Father typically had parenting time every other weekend. Father also married after he and Mother separated, and he has two stepdaughters who are close to Child's age.

[6] In December 2023, Mother converted from Christianity to a religion known as the Messianic Congregation of Joy and Peace, and she also began raising Child in that faith. The religion has strict dietary restrictions, which Mother requested that Father follow when Child was in his care. Mother also does not observe holidays or secular celebrations and does not want Child to participate in any celebrations or parties.

[7] On April 23, 2024, Father filed a petition to establish custody, parenting time, and child support. The trial court held hearings on Father's petition on November 1 and December 20. Child was six years old on the dates of the hearings. At the December 20 hearing, Mother testified that her husband Ascencio has his own residence, but he often spends the night at Mother's residence. She also stated that she believed that Ascencio had touched K.G. in a sexually inappropriate manner.

[8] Father argued that the trial court should grant sole legal custody of Child to him due to the parties' differing religious beliefs. Father also requested primary physical custody because of Mother's continued relationship with Ascencio, particularly because Ascencio spends a significant amount of time in Mother's house. Father asked the court to order Mother to keep Ascencio out of Child's presence. And Father expressed concern that Mother's recent religious conversion was having a negative impact on Child. Mother asked for sole legal custody with respect to religion only. She also requested primary physical custody and believed that Father should have parenting time consistent with the Parenting Time Guidelines.

[9] On January 2, 2025, the trial court issued an order granting Father legal and physical custody of Child. In support of its order, the court issued the following relevant findings of fact:

> 7. During the first three years of the minor child's life, she resided with Respondent-mother and Petitioner-father, and Petitioner-father was an active participant in . . . her daily care and upbringing.
>
> 8. In August 2021, Respondent-mother left Petitioner-father and resumed a relationship with [Ascencio], the father of her now 17-year old daughter . . . [K.G.].
>
> 9. Petitioner-father continued to maintain a close and loving relationship with the minor child after the Respondent-mother separated from him. He married and has two young stepdaughters, who have a close relationship with the minor child. He exercised parenting time as allowed by Respondent-

mother, which included mainly weekends as well as a weeklong period while Respondent-mother visited California. However, he became increasingly concerned about the well-being of the minor child, and filed for full legal and residential custody because of his concerns.

10. Petitioner-father's concerns are well-founded.

11. Since 2022, Respondent-mother has believed that [Ascencio] has touched their daughter [K.G.] in a sexually inappropriate way. The police and Indiana Department of Child Services did investigate these allegations and charges were not filed; nonetheless, Respondent-mother still believes that it occurred.

12. Despite her belief that [Ascencio] touched [K.G.] in a sexually inappropriate way, Respondent-mother is currently married to [Ascencio] and continues to have an intimate relationship with him. Moreover, he spends time, including overnights, at her home when the minor child and [K.G.] are there, even though he has his own residence.

13. At the November 1, 2024 hearing, Respondent-mother explicitly testified that [Ascencio] only slept over at her home when the minor child was having overnight parenting time at the home of Petitioner-father. However, during the December 20, 2024 hearing, she stated that he is often present in her home and sleeps over even when the minor child is there. Thus, either Respondent-mother was not truthful at the November 1, 2024 hearing, or Respondent-mother has determined sometime during the past two months that [Ascencio] does not pose a risk to the safety of the minor child. Both of those conclusions are equally troubling to the Court.

14. In December 2023, Respondent-mother converted from Christianity to the Messianic Congregation of Joy and Peace and

is raising the minor child in that faith. Petitioner-father and his family including the minor child's stepsisters are members of the Christian faith, and until December 2023, the minor child was raised by both of her parents in the Christian faith. The minor child's older sister [K.G.] and her older adult sister do not practice the Messianic Faith. The Messianic Faith has very strict rules, and the Congregation of Joy and Peace is a more restrictive sub-sect of the Messianic Faith with congregations located only in New Jersey and Miami. Citing the Messianic Faith, Respondent-mother has placed very stringent dietary restrictions upon herself and the minor child and does not observe holidays or secular celebrations or participate in parties of any type. Respondent-mother expects Petitioner-father to have the minor child keep these observances in his home even when her father, stepmother, and stepsisters are not doing so.

15. The minor child missed 22 days of school during the 2023-2024 school year. She has missed much less school this year, but she has missed several days and Respondent-mother took her out of school for Halloween because of her opposition to celebrating holidays.

16. The Respondent-mother sleeps many nights in bed with the minor child in either her bedroom or the minor child's bedroom.

17. There are numerous people living in the home of Respondent-mother, including Respondent-mother, the minor child, [K.G.], Respondent-mother's adult daughter, Respondent-mother's brother and niece who live in the living room, a female friend, and [Ascencio] is there frequently and spends the night.

18. The Petition[er]-father has a home where he lives only with his wife and two [stepdaughters]. The minor child has a large bedroom there that she shares with her [stepsisters].

Appellant's App. pp. 9-11.

[10] After considering the factors enumerated in Indiana Code section 31-17-2-8,[1] the court concluded that awarding Father legal and physical custody of Child was in her best interests. Regarding Mother's parenting time, the trial court concluded that the Parenting Time Guidelines "shall not apply in this matter because the parenting time afforded to Respondent-mother by the guidelines endangers the minor child's physical health and/or significantly impairs the child's emotional development in light of the Court's findings of fact" *Id*. at 12. The court then awarded Mother nine hours of parenting time per week: two hours in the evening every Tuesday and Thursday and five hours every Saturday. *Id*. The court also ordered that Ascencio "shall not be present at the parenting time or near the minor child at any time." *Id*. (emphasis omitted). The court also gave Father permission to "immediately transfer the minor child to a school within his home district." *Id.* at 13.

[11] Mother now appeals.

## Standard of Review

[12] Mother appeals the court's order awarding Father legal and physical custody of Child and restricting her parenting time to nine hours per week. The trial court

---

[1] The trial court incorrectly cited the statute that courts must consider when making a custody determination in dissolution of marriage proceedings. However, the dissolution and paternity statutes concerning custody are substantially similar.

issued findings of fact and conclusions thereon supporting its order. Pursuant to Indiana Trial Rule 52(A), we will not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. *Steele-Giri v. Steele (In re Marriage of Steele-Giri)*, 51 N.E.3d 119, 123 (Ind. 2016). Where, as here,

> a trial court enters findings sua sponte, the appellate court reviews issues covered by the findings with a two-tiered standard of review that asks whether the evidence supports the findings, and whether the findings support the judgment. Any issue not covered by the findings is reviewed under the general judgment standard, meaning a reviewing court should affirm based on any legal theory supported by the evidence.

*Id*. at 123-24 (citation omitted).

[13]     Moreover,

> there is a well-established preference in Indiana for granting latitude and deference to our trial judges in family law matters. Appellate courts are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence. On appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal. Appellate judges are not to reweigh the evidence nor reassess witness credibility, and the evidence should be viewed most favorably to the judgment.

*Id*. at 124 (citations and quotation marks omitted).

## The Trial Court Did Not Abuse its Discretion When it Awarded Legal and Physical Custody of Child to Father.

[14] First, Mother argues that the trial court abused its discretion when it awarded legal and physical custody of Child to Father. Mother also contends that the trial court applied an incorrect standard when it made its custody decision because it failed to address whether there had been a substantial change in one of the factors enumerated in Indiana Code section 31-14-13-2.

[15] The "biological mother of a child born out of wedlock has sole legal custody of the child . . . unless a statute or court order provides otherwise . . . ." Ind. Code § 31-14-13-1. Therefore, Mother had legal custody of Child for the entirety of Child's life. And for nearly three years prior to filing his custody petition, Father acquiesced to Mother's physical custody of Child. For these reasons, we agree with Mother that the trial court should have treated Father's petition as a petition to modify custody, and the court should have considered his petition under the custody modification statute, Indiana Code section 31-14-13-6. *Paternity of I.P. ex rel. Souders v. Powell*, 148 N.E.3d 1098, 1104 (Ind. Ct. App. 2020); *see also In re Paternity of Winkler*, 725 N.E.2d 124, 128 (Ind. Ct. App. 2000) (holding that "after a long acquiescence by a father in a paternity context, a trial court may not send a child to live with the other parent unless there is a showing pursuant to Ind[iana] Code [section] 31-14-13-6"). The stricter rationale is required because permanence and stability are deemed crucial for the wellbeing and happiness of the child. *See Winkler*, 725 N.E.2d at 127.

The modification statute requires the parent requesting modification to prove that 1) modification is in the child's best interests and 2) there has been a substantial change in one or more of the factors enumerated in Indiana Code section 31-14-13-2. *Id*. Those factors are as follows:

(1) The age and sex of the child.

(2) The wishes of the child's parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

(A) the child's parents;

(B) the child's siblings; and

(C) any other person who may significantly affect the child's best interest.

(5) The child's adjustment to home, school, and community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 2.5(b) of this chapter.

I.C. § 31-14-13-2.

[17] Here, the trial court only made findings addressing six-year-old Child's best interests. However, the parties presented evidence concerning other relevant factors listed in Indiana Code section 31-14-13-2 and recent changes in the parties' circumstances related to those factors. Moreover, the court's findings establish that the court considered the enumerated factors in light of the parties' evidence of changed circumstances.

[18] The parties presented evidence of two significant changes in their circumstances that led to Father's decision to file his petition for custody of Child. The first change involves Ascencio's increased presence in Mother's home. When Mother first came to believe that Ascencio had touched her daughter K.G. inappropriately, she restricted his access to the home and her children. Mother believes that Ascencio touched K.G. in a sexually inappropriate manner even though the police and DCS investigations did not result in any action against him. Mother continued to restrict Ascencio's access to her home and children for an unspecified amount of time after the investigation ended. But Mother and Ascencio remain married, and, even though he maintains his own residence, he now often spends the night in Mother's home. The court expressed concern that Mother no longer considers Ascencio's presence in her home to pose a risk to Child. Appellant's App. p. 10.

[19] The court also considered Mother's recent conversion from Christianity to the Messianic Congregation of Joy and Peace, which is a more restrictive sub-sect

of the Messianic Faith. Our court has held that "'a change of circumstances relating to religion will sometimes be sufficient to warrant a change in custody.'" *Easterday v. Everhart*, 201 N.E.3d 264, 268-69 (Ind. Ct. App. 2023) (quoting *Johnson v. Nation*, 615 N.E.2d 141, 145 (Ind. Ct. App. 1993)). "However, there is 'no authority . . . which supports [a trial court's] conclusion that a substantial change in circumstances related to religion, without more, may support a modification of custody.'" *Id.* at 269 (quoting *Johnson*, 615 N.E.2d at 146).

[20] Mother expects Father to follow stringent dietary restrictions in his own home and does not want Father to allow six-year-old Child to participate in holidays or any celebrations. Mother's religious conversion has caused conflict between the parties, particularly because Mother began to limit Father's parenting time. Specifically, Mother refused to allow Father to take Child to his church during his parenting time; therefore, Mother began to pick Child up from Father's house early on Sundays. Also, no other members of Mother's family, including Child's older sisters, have converted to Mother's new religion. Father expressed concern that Mother's strict adherence to the Messianic Faith will isolate Child not only from Father's family and Child's community, but also from Mother's family members who continue to celebrate birthdays and religious holidays. Father was concerned that the restriction on his parenting time and Child's isolation from her family members would negatively impact her well-being and her relationship with other family members. The trial court appropriately considered Mother's conversion to a new religion as a substantial change in

circumstances because of the impact her religious conversion has had on Father's parenting time and the well-being of Child.

[21] Although the trial court did not cite the modification statute in its findings of fact and conclusions of law, it is apparent on the record before us that Father's request for a change of custody was due to substantial changes in the parties' circumstances. The court's order modifying custody to Father is supported by evidence of substantial changes in several of the factors enumerated in Indiana Code section 31-14-13-2.

[22] Mother also argues that the trial court's decision to award custody to Father is not in Child's best interests. Mother's argument is merely a request to reweigh the evidence and the credibility of the witnesses, which our court will not do. Father lived with Child for the first three years of her life and exercised parenting time with her regularly after the parties separated. Father lives with his wife and stepdaughters, who are close to Child's age, and Child shares a close relationship with them. Mother has allowed numerous people to live in her home, including a non-family member. And Ascencio spends significant time in her residence, which poses a risk to Child. Finally, Mother's new religious practices have become a source of contention between the parties and Mother's justification for restricting Father's parenting time. This evidence supports the trial court's conclusion that awarding physical and legal custody of Child to Father is in her best interests.

[23]    For all of these reasons, we conclude that the trial court did not abuse its discretion when it awarded legal and physical custody of Child to Father.

## The Restriction of Mother's Parenting Time is not Supported by the Evidence.

[24]    Next, we address Mother's argument that the trial court abused its discretion when it significantly restricted her parenting time with Child. The trial court concluded that the Parenting Time Guidelines "shall not apply in this matter because the parenting time afforded to Respondent-mother by the guidelines endangers the minor child's physical health and/or significantly impairs the child's emotional development . . . ." Appellant's App. p. 12. The court then awarded Mother nine hours of parenting time per week: two hours in the evening every Tuesday and Thursday and five hours every Saturday. *Id.*

[25]    Parenting time decisions "require[] us to 'give foremost consideration to the best interests of the child.'" *Perkinson v. Perkinson*, 989 N.E.2d 758, 761 (Ind. 2023) (quoting *Marlow v. Marlow*, 702 N.E.2d 733, 735 (Ind. Ct. App. 1998)). And our court "will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment." *Id.* (quoting *Baxendale v. Raich*, 878 N.E.2d 1252, 1257–58 (Ind. 2008)).

[26]    Restrictions on parenting time require a specific finding contemplated by the statute. Ind. Code § 31-17-4-1; *see also Roper v. Roper*, 223 N.E.3d 732, 737 (Ind. Ct. App. 2023). Specifically, Indiana Code section 31-17-4-1 provides in pertinent part that "a parent not granted custody of the child is entitled to

reasonable parenting time rights unless the court finds, after a hearing, that parenting time by the noncustodial parent might endanger the child's physical health or significantly impair the child's emotional development." Because the trial court only awarded Mother nine hours of parenting time per week and no overnight visitation, the court was required to issue the findings required by Indiana Code section 31-17-4-1. *See Stafford v. Stafford*, 256 N.E.3d 595, 599-600 (Ind. Ct. App. 2025) (concluding that eliminating all overnight parenting time is a significant deviation from the Parenting Time Guidelines, and therefore, the trial court is required to provide the findings required by section 31-17-4-1).

[27]   Here, the trial court's finding simply recites the statutory language without explaining how Mother's parenting time with Child would endanger her or significantly impair her emotional development.[2] *See S.M. v. A.A.*, 136 N.E.3d 227, 230 (Ind. Ct. App. 2019) (noting that although the statute says "might endanger" our courts have concluded that a court may not restrict parenting time unless that time "would" endanger the child's physical health or emotional development). "The court's written explanation must include both 'a factual basis and a finding as to potential endangerment.'" *Id.* (quoting *Rickman v. Rickman*, 993 N.E.2d 1166, 1169 (Ind. Ct. App. 2013)). Moreover, because "the right of a non-custodial parent to visit his or her children is a 'precious privilege'

---

[2] The trial court's reliance on its findings of fact as a whole to support this finding is not sufficient in this case for the reasons we express in paragraph 28.

. . . '[e]xtraordinary circumstances must exist to deny parenting time to a parent, which necessarily denies the same to the child.'" *Id.* (citations omitted).

[28] We are not satisfied by the trial court's findings on this issue. For over six years, Mother was Child's primary caretaker, and she was Child's custodial parent for approximately three years after the parties separated. Although we affirm the trial court's finding that the custody modification was in Child's best interests, it does not necessarily follow that the significant deviation from the Parenting Time Guidelines is also in Child's best interests. Father and the trial court certainly have valid concerns that Ascencio's continued and increased presence in Mother's life poses a risk to Child, but the trial court ordered that Ascencio "shall not be present at the parenting time or near the minor child at any time." Appellant's App. p. 12 (emphasis omitted). And Ascencio maintains his own residence, so removing him from Child's presence during Mother's parenting time does not pose a hardship to Mother. In addition, the concerns that Mother's adherence to the strict mandates of her new religion would negatively impact Child's well-being and relationships with her family members and her community are not reasons to restrict Mother's parenting time when Mother is no longer Child's legal custodian.

[29] Because there is no evidence to support the trial court's finding that allowing Mother parenting time with Child would endanger Child's physical or mental well-being, we reverse the trial court's parenting time decision and remand for proceedings consistent with this opinion.

## Conclusion

We affirm the trial court's order modifying physical and legal custody of Child to Father. However, the trial court abused its discretion when it restricted Mother's parenting time without making the requisite statutory findings. Moreover, the evidence does not support the parenting time restriction of nine hours per week with no overnight visitation. We therefore reverse the parenting time decision and remand for restoration of Mother's parenting time consistent with the Parenting Time Guidelines or for hearing and entry of findings to the contrary pursuant to the Guidelines and Indiana Code section 31-17-4-1(a).

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

May, J., and Bradford, J., concur.

ATTORNEYS FOR APPELLANT

Alexander N. Moseley
Adrian Deneen
Dixon & Moseley, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Amy R. Stein
Stein Law
New Albany, Indiana