Dawn Nalee WINKLER, Appellant–
Petitioner,

v.

Kirk Steven WINKLER, Sr.,
Appellee–Respondent.

No. 16A05–9612–CV–528.

Court of Appeals of Indiana.

July 28, 1997.

Robert E. Marshall, Bryan S. Redding, Law Office of Robert E. Marshall, Shelbyville, for Appellant–Petitioner.

Karl L. Mulvaney, Candace L. Sage, Bingham Summers Welsh & Spilman, Indianapolis, for Appellee–Respondent.

## OPINION

BARTEAU, Judge.

Dawn N. Winkler (Mother) appeals the trial court's order changing the custody of the parties' two children to their father, Kirk S. Winkler, Sr. (Father). Mother raises four issues, which we consolidate and restate as:

1. Whether the trial court erred in basing the change of custody order upon Mother's decision to educate the children in the deaf culture at the Indiana School for the Deaf?

2. Whether the trial court's change of custody order violates federal law?

3. Whether the evidence was sufficient to sustain the trial court's determination that a substantial change of circumstances had occurred?

We affirm.

### FACTS

Upon the dissolution of the parties' marriage on July 23, 1992, the trial court granted Mother custody of the parties' two children, KJ, born October 13, 1988, and Nikki, born September 14, 1989. Both Mother and Father are profoundly deaf, and have been since birth and ten months of age respectively. KJ is also profoundly deaf, and has been since birth. Nikki is hard of hearing, but with a hearing aid has normal to near-normal hearing. In the fall of 1992, shortly before the children turned ages four and three, Mother placed them as residential students in the Indiana School for the Deaf. The children resided at the school during the week and returned home on weekends. Father was granted guidelines visitation.

Custody and visitation issues were before the dissolution court from December of 1994, when Mother filed a petition to restrict visitation alleging that Father touched Nikki in a sexual manner, to the time the court ordered the change of custody in December of 1996. During that time the parties underwent two separate evaluations, one by Dr. Richard Lawlor and one by Marcus Maddux. The children were evaluated yearly at school in relation to their hearing and were also evaluated by two audiologists, one of whom was court appointed. After numerous hearings and significant evidence, the trial court determined that there had been a substantial change in circumstances since the original custody determination and that it was in the children's best interests that Father be awarded custody. The trial court entered the following findings of fact in support of its determination:

IT IS FURTHER FOUND that both children have special needs with regard to their educational, social, and emotional needs, and that it is in the best interests of the children, and that those needs can be best met by custody being placed with Kirk Steven Winkler, Sr.

IT IS FURTHER FOUND that Kirk Winkler, Jr. and Nikki Winkler should be placed in a regular school with an established program for students with hearing impairment, and those needs can be best addressed with custody being placed with Kirk Steven Winkler, Sr.

IT IS FURTHER FOUND that both Kirk Winkler, Jr. and Nikki Winkler need to have the opportunity to interact both in an educational and social environment, with both hearing and deaf students, and the Court finds that those opportunities are not currently being met by the mother, Dawn Nalee Winkler, and that opportunity is best afforded to the children by custody being placed with Kirk Steven Winkler, Sr.

IT IS FURTHER FOUND that the children can and will benefit from hearing aids, and the Court finds that that need of the children is not presently being addressed or met by the mother, Dawn Na-

lee Winkler, and she is not encouraging the children to use hearing aids, and placement with their father, Kirk Steven Winkler, Sr., will better facilitate the use of hearing aids.

IT IS FURTHER FOUND that the children have exhibited both the need and the desire to be with their father, and the Court finds that the children's best interests will be served by residing with their father and attending school under his direction, while keeping in mind that both children can and will benefit from a program established for students with hearing impairment.

IT IS FURTHER FOUND that the proposal for the children's school needs presented by Kirk Steven Winkler, Sr. meets the needs of the educational requirements of the children, and that it is in their best interests that such an educational program be undertaken on behalf of the children.

IT IS FURTHER FOUND that the physical and emotional well-being and development is better addressed by custody being placed with Kirk Winkler, Sr., and that over the last two years the children have been limited under the custody of Dawn Nalee Winkler with regard to their educational, social and emotional development such as to pose a real threat to the children's development, warranting a change in custody.

R. 173–76.

### STANDARD OF REVIEW

In reviewing a trial court's modification of custody, we will not reweigh the evidence, judge the credibility of the witnesses, or substitute our judgment for that of the trial court. *Aylward v. Aylward,* 592 N.E.2d 1247, 1250 (Ind.Ct.App.1992). We will reverse only if the trial court's decision is against the logic and effect of the facts and circumstances before it or the reasonable inferences to be drawn therefrom. *Id.*

### CHANGE OF CUSTODY

Mother asserts that the trial court erred when it took education issues into consideration in ordering a change of custody. In support of her argument, Mother relies heavily on section 31–1–11.5–21(b) of the Indiana Code, which reads:

(b) Except as otherwise agreed by the parties in writing at the time of the custody order, the custodian may determine the child's upbringing, including his education, health care, and religious training, unless the court finds, after motion by a noncustodial parent, that in the absence of a specific limitation of the custodian's authority, the child's physical health would be endangered or his emotional development significantly impaired.

According to Mother, pursuant to this statute all issues involving a child's upbringing are the exclusive province of the custodial parent. Therefore, Mother contends, if the trial court finds that a child's physical health would be endangered or his emotional development significantly impaired by a custodial parent's upbringing decisions, the trial court is limited to placing restrictions on the custodial parent's unbridled authority. We disagree with such an expansive reading of the statute.

Section 31–1–11.5–21(b) addresses the situation where a non-custodial parent seeks to limit the custodial parent's decision-making authority. The trial court is granted the power to limit that authority upon a motion and proof by the non-custodial parent that the child's physical health or emotional development might be impaired without limitations being imposed. It in no way addresses the situation where a non-custodial parent seeks a modification of custody based on the best interests of the child. That situation instead is covered by section 31–1–11.5–22(d) of the Indiana Code which provides:

(d) The court may not modify a child custody order unless:

(1) it is in the best interests of the child; and

(2) there is a substantial change in one (1) or more of the factors which the court may consider under section 21(a) of this chapter.

Section 21(a) reads:

(a) The court shall determine custody and enter a custody order in accordance with

the best interests of the child. In determining the best interests of the child, there shall be no presumption favoring either parent. The court shall consider all relevant factors including:

(1) the age and sex of the child;

(2) the wishes of the child's parent or parents;

(3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;

(4) the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;

(5) the child's adjustment to his home, school, and community;

(6) the mental and physical health of all individuals involved; and

(7) evidence of a pattern of domestic violence by either parent.

These sections contain no limitation on the factors the court may consider in making a best interests determination and we believe no limitation exists. Instead, in determining whether modification of custody would be in a child's best interests, a trial court must consider all relevant factors. *Joe v. Lebow,* 670 N.E.2d 9, 23 (Ind.Ct.App.1996). Education, religion and health care would all clearly be relevant to a best interests determination.

■ This court has determined that it is impermissible for a trial court to base a modification of custody solely upon a change in religious or educational training, because those matters are generally reserved to the custodial parent's discretion. *Johnson v. Nation,* 615 N.E.2d 141 (Ind.Ct.App.1993) (modification of custody impermissibly based solely upon a change in custodial parent's religious involvement). However, those matters may be considered as part of a best interests determination. Ind.Code § 31–1–11.5–21(a)(5) (trial court must consider all relevant factors, including the "child's adjustment to his home, school, and community"). If the religious or educational decisions endanger the children's physical health or emo-

tional development, then a modification of custody is permissible. *Johnson,* 615 N.E.2d at 146. A modification of custody would also be permissible if a religious or educational decision, *combined* with other relevant considerations, makes it in the children's best interests. *Joe v. Lebow,* 670 N.E.2d at 22–23 (While the trial court could not find a substantial change in circumstances based only upon changes in a child's circumstances after being removed from custodial parent's custody, those changes were relevant to a best interests determination.); Ind.Code § 31–1–11.5–21(a).

Here, some of the trial court's findings address purely educational issues, others address non-educational issues, and others overlap. The overlap occurs because of the children's hearing impairments. The reason the children were placed at the Indiana School for the Deaf is because they have impaired hearing. Yet, their hearing impairments are also significant to their best interests in ways other than educational choices. Mother's decision to place the children at the Indiana School for the Deaf does not transform every issue involving the children's sense of hearing into a purely educational decision.

A review of the trial court's findings as a whole and a review of the record leads us to the conclusion that the trial court's decision was not based solely upon the trial court's disagreement with Mother's educational choice. The trial court found that the children can and will benefit from the use of hearing aids and that Mother was not meeting the children's needs in this regard. This factor is quite significant in light of the evidence that Nikki has normal to near-normal hearing with a hearing aid, that hearing aids were recommended for both children as far back as 1992, and that Mother made no effort to provide the children with hearing aids until 1995 in the midst of this litigation.

The trial court found that the children have exhibited both the need and the desire to be with Father. This is a relevant factor which the trial court was obligated to consider. Ind.Code § 31–1–11.5–21(a)(3).

The trial court found that the children needed the opportunity to interact with hear-

ing and deaf persons, that Mother was not meeting that need, and that the children's special needs could be best met by custody being placed with Father. The evidence established that the children's interaction with the hearing community was severely limited in Mother's custody and that in Father's custody they would be exposed to both the deaf community and the hearing community. The community in which Father lived had a large deaf population. Both of Father's step-children who lived with him were hearing but communicated through speech and sign language, as did Father's daughter from a prior marriage. Further, the evidence established that Nikki greatly desired to be exposed to the hearing world and to learn spoken English, and that her desires and needs were not being addressed by Mother.

The trial court also found that over the last two years the children had been limited under the custody of Mother with regard to their educational, social and emotional development such as to pose a real threat to the children's development and that these issues would be better addressed by custody being placed with Father. These findings are also amply supported by the record. Following the dissolution of the marriage, the children, ages two and three at the time, were enrolled as residential students in the Indiana School for the Deaf. As residential students, they spent the week living at the school in Indianapolis and returning to Mother's home on the weekends they did not have visitation with Father. During the week the two children attended separate classes, lived in separate dormitories, and had little chance for interaction with each other. KJ also experienced some behavior problems while living at the school.

In contrast, the evidence established that if the children lived with Father they could attend a nearby day school with an established program for hearing impaired students, would live at home full time, and have the benefit of daily interaction with each other and Father in a family environment.

While Mother asserts that the sole deciding factor in this case was a determination by the trial court that the children should not be raised "deaf" at the Indiana School for the Deaf, the trial court's findings demonstrate otherwise. Given the trial court's findings and the evidence presented, we cannot say that it was error for the trial court to conclude that it was in the best interests of the children that their custody be changed to Father.

## INDIVIDUALS WITH DISABILITIES EDUCATION ACT

 Mother also makes an argument that the trial court's order violates Federal law by usurping the authority of the Individuals with Disabilities Education Act ("IDEA").[1] The IDEA requires participating states, as a condition of receiving federal assistance, to provide a free and appropriate public education to all disabled children. *Evans v. Tuttle,* 613 N.E.2d 854, 857–58 (Ind. Ct.App.1993). In connection with the IDEA, a case conference committee is established to create an individualized education program for each disabled student. Both KJ's and Nikki's case conference committee agreed with Mother's decision to send KJ and Nikki to the Indiana School for the Deaf.

Contrary to Mother's assertion, the IDEA in no way precludes the trial court from ordering a change of custody which involves changing the children's educational placement. The fact the case conference committee recommends a particular educational placement is not binding. If a parent of a disabled child disagrees with the recommendation, they may appeal or send their child to a different school at their own expense. If a parent and child would move to a new school district, an educational placement would have to be reevaluated. Likewise, if the child was no longer a resident of the State of Indiana, the recommendation of the child's former case conference committee would be meaningless. The IDEA has no impact whatsoever on this case.

## SUBSTANTIAL CHANGE IN CIRCUMSTANCES

 Mother contends that the evidence does not sustain the trial court's finding that

1. 20 U.S.C. §§ 1401, *et seq.*

there was a substantial change in circumstances justifying the modification of custody. The court's order provides that there has been "a substantial, significant, and continuing change in circumstances sufficient to warrant a change in custody." R. 173. While the court did not designate a specific change in circumstances in its order, the trial court's findings contain sufficient detail to satisfy the statutory requirement of a substantial change in circumstances. In particular, the court's findings that the children have the need and desire to live with Father, that they need interaction with members of the hearing community, and that they need hearing aids satisfy the combined requirements of sections 31–1–11.5–22(d) and 21(a) of the Indiana Code.

The trial court is affirmed in all respects.

SHARPNACK, C.J., and GARRARD, J., concur.