## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 05 2017, 9:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Carl Paul Lamb
Carl Lamb & Associates
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

David A. Smith
Patrick J. Smith
McIntyre & Smith
Bedford, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Brooke Mosier,

*Appellant-Respondent,*

v.

Derrick Pickett,

*Appellee-Petitioner.*

October 5, 2017

Court of Appeals Case No.
47A05-1702-DR-224

Appeal from the Lawrence
Superior Court

The Honorable Dena B. Martin,
Special Judge

Trial Court Cause No.
47D01-0610-DR-1312

**Bradford, Judge.**

# Case Summary

[1] Appellant-Respondent Brooke Mosier ("Mother") appeals from the trial court's order granting physical and legal custody of her three minor children to her ex-husband Appellee-Petitioner Derrick Pickett ("Father"). Specifically, Mother contends that the trial court erred when it found that a modification of custody was in the children's best interests and when it allowed the Guardian Ad Litem ("GAL") to testify at the final hearing. Concluding that the trial court did not err, we affirm.

# Facts and Procedural History

[2] Mother and Father finalized their divorce on May 18, 2007. They have three children together: E.P., H.P., and B.P. At the time of their divorce, Mother and Father shared joint legal custody and Mother had physical custody. Father was ordered to pay child support. Following the divorce in 2007, the parties returned to court on various issues on June 4, 2009, September 2, 2009, April 9, 2012, June 6, 2012, May 13, 2013, July 23, 2013, April 24, 2015, June 17, 2015, and August 28, 2015.

[3] In the spring of 2016, the parties filed a round of contempt citations. The trial court held a hearing on the pending motions on May 20, 2016. (Tr. Vol. I p 4). Mother presented testimony from Family Case Manager ("FCM") Kevin Goodman, an Indiana Department of Child Services ("DCS") employee, regarding an investigation into Father. The parties detailed the allegations

supporting their pending contempt citations. Mother also asked the trial court to conduct an *in camera* interview of the minor children.

[4] Following additional testimony on the issues before the trial court, the trial court granted Mother's request for the *in camera* interview of the children over Father's objection. Following the interview, the trial court announced on the record its intention to appoint a GAL for the minor children. Eventually, the parties agreed that Debra Herthel, a Bedford attorney, would serve as the GAL. The trial court determined that it would reset the matter for a final hearing, after GAL Herthel submitted her report. On July 15, 2016, Father filed a motion to modify custody.

[5] On January 6, 2017, the court conducted a hearing on Father's motion to modify custody. At the hearing, GAL Herthel testified about her investigation. Based upon her investigation, GAL Herthel testified that she believed the children exhibited "utter disrespect" for Father. Tr. Vol. I, p. 84. She further testified that she believed that Mother had "tried her best to taint the relationship with [Father] and his children and she has been successful at doing so." Tr. Vol. I, p. 84. GAL Herthel also discussed at length the impact that the dispute between Mother and Father was having on the children. Additionally, GAL Herthel testified that Mother was not providing E.P. with medication necessary for his ADHD.

[6] Mother also testified and set forth her positions on the issues regarding the children's disrespect for Father, E.P.'s need for medication, and Father's

involvement in the children's activities.[1]  Mother further testified that she has "fought with the doctor tooth and nail" on whether B.P. should be put on mediation for her depression.  Tr. Vol. I p. 126.  On cross-examination, Mother testified that she was living in a rented home with her soon-to-be-ex-husband, but had plans to move out.  GAL Herthel questioned Mother at length about the issues surrounding E.P.'s medication and ADHD.

[7]  The trial court also questioned Mother about the issues of medication.  Mother outlined her view at length that she did not believe that E.P. needed the medication and indicated that she would not provide him with the medication at various times.  Father's wife also testified about E.P.'s behavior and his need for medication.  The record shows that E.P. tries to hurt his sisters and step-siblings when he is not on his medication.  He "punches the walls, kicks them." Tr. Vol. I, p. 147.  Father's wife testified that E.P. has even tried to burn down their house and choke the dog when he was not on his medication.  When E.P. is on his medication, Father's wife testified that he is very polite, does not hurt anyone, and does his chores.  r. Vol. I, p. 148).

[8]  Based upon Mother's testimony at the custody hearing, GAL Herthel recommended that the trial court award Father legal custody of the minor children.  GAL Herthel recommended extensive parenting time for Mother.  At

---

[1] Based on the record, it appears that the children may be informally talking to someone at school, but they have not received counseling for their anger and behavioral issues from a licensed professional.

the conclusion of the hearing, the trial court awarded Father legal and physical custody of the minor children, effective immediately.

# Discussion and Decision

On appeal, Mother raises several contentions of error which we consolidate and restate as follows: 1) whether the trial court's determination to modify custody was unsupported by the evidence and an abuse of discretion and 2) whether the trial court erred when it allowed the GAL to testify at the final hearing.

# I. Standard of Review

The trial court did not issue special findings. "In the absence of special findings, we review a trial court decision as a general judgment and, without reweighing evidence or considering witness credibility, affirm if sustainable upon any theory consistent with the evidence." *Perdue Farms, Inc. v. Pryor*, 683 N.E.2d 239, 240 (Ind. 1997) (citations omitted). "Judgments in custody matters typically turn on essentially factual determinations and will be set aside only when they are clearly erroneous. We will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment. The concern for finality in custody matters reinforces this doctrine." *Baxendale v. Raich*, 878 N.E.2d 1252, 1257-58 (Ind. 2008) (citations omitted).

There is also a well-established preference in Indiana "for granting latitude and deference to our trial judges in family law matters." *In re Marriage of Richardson*, 622 N.E.2d 178 (Ind. 1993). Appellate courts "are in a poor position to look at

a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence." *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002) (citation omitted). "On appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal." *Id*. "Appellate judges are not to reweigh the evidence nor reassess witness credibility, and the evidence should be viewed most favorably to the judgment." *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011) (citations omitted).

## II. Child Custody

[12] Indiana Code section 31-17-2-21 provides that a trial court "may not modify a child custody order unless: (1) the modification is in the best interests of the child; and (2) there is a substantial change in one (1) or more of the factors that the court may consider under" Indiana Code section 31-17-2-8. Indiana Code section 31-17-2-8 provides that the trial court is to consider all relevant factors, including:

> (1) The age and sex of the child.
>
> (2) The wishes of the child's parent or parents.
>
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
>
> (4) The interaction and interrelationship of the child with:
>
>> (A) the child's parent or parents;

(B) the child's sibling; and

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian.

"These sections contain no limitation on the factors the court may consider in making a best interests determination and we believe no limitation exists." *Winkler v. Winkler*, 689 N.E.2d 447, 450 (Ind. Ct. App. 1997). The trial court must consider all relevant factors when determining whether modification of custody would in the children's best interests. *Id*. "We review custody modifications for an abuse of discretion and must grant latitude and deference to trial courts in family law matters." *Id*.

[13] In this case, the trial court heard testimony from Father, Father's wife, Mother, GAL Herthel, and FCM Goodman. The trial court also conducted an *in camera* interview with the children and questioned Mother. During the hearing, multiple witnesses expressed concern regarding Mother's aversion to providing E.P. with his ADHD medication. There was also evidence that E.P. can be difficult to handle and violent when he is not medicated. The record shows that

E.P.'s violent tendencies include attempting to set his Father's home on fire, choking the family dog, and hurting his sisters. The trial court was also presented with evidence that Mother spoke negatively to the children about their Father, and the children called Father by his first name and their soon-to-be-ex-step-father "dad." Tr. Vol. I, p. 168. While it appears that the children may talk to someone unofficially at school, the children have never received professional counseling to deal with their various behavioral issues.

[14] There was also evidence before the court that Mother's and Father's ability to work together had deteriorated substantially and, due to that deterioration, Father wished to have full custody of the children. Considering the deterioration of the parents' relationship and Mother's refusal to consistently provide E.P. with his medication, we find sufficient evidence supporting the trial court's conclusion that there has been a substantial change in circumstances and that modification of physical custody is in the best interests of the children. Mindful of the substantial deference that we accord to our trial courts in family law matters, we cannot say that the trial court abused its discretion by modifying physical and legal custody of E.P., H.P., and B.P.

## III. GAL Testimony

[15] Generally, in Indiana "[a] party waives appellate review of an issue or argument unless the party raised that issue or argument before the trial court." *M.S. v. C.S.*, 938 N.E.2d 278, 285 (Ind. Ct. App. 2010). Here, Mother argues that the trial court erred when it allowed GAL Herthel to testify at the final

hearing without first submitting a written report. Mother, however, failed to raise this issue or argument before the trial court and made the decision not to cross-examine GAL Herthel during the hearing. Mother was also given the opportunity to testify, in largely narrative form, before the court about the issues raised by GAL Herthel.

[16] Wavier notwithstanding, Mother was not prejudiced by the trial court's decision to allow GAL Herthel to testify during the final hearing. Mother points only to the trial court's June 21, 2016 order for the proposition that GAL Herthel had to file a report ten days before the final hearing. The trial court did not err when it allowed GAL Herthel to testify without having filed a report. The trial court was not required to order GAL Herthel to submit any report before or after the final hearing. Under Indiana Code section 31-17-2-12, "the court *may* order an investigation and report concerning custodial arrangements for the" children and the report may be made by the GAL, the court social service agency, the staff of the juvenile court, the local probation department, the department of child services, or a private agency employee by the court. (emphasis added). Mother cites to no case law that would have required GAL Herthel to submit a report in order to be allowed to testify, and our own research confirms that no such case exists. Due to Mother's lack of objections at the trial court level and the fact that she was given the opportunity to cross-examine GAL Herthel, the trial court did not err when it allowed the GAL to testify at the final hearing.

[17] The judgment of the trial court is affirmed.

May, J., and Barnes, J., concur.